UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| REYNALDO CRESPIN, an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>THE STATE OF NEVADA, NEVADA DEPARTMENT OF CORRECTIONS, H.D.S.P. MEDICAL DEPARTMENT, JAMES SCALLY, Associate Warden of High Desert State Prison, JAMIE CABRERA, Director of Nursing at High Desert State Prison, MR. ARAYSIO, Correctional Officer at High Desert State Prison, DR. MALANAGA, Physician at High Desert State Prison, DR. EVRAM, Physician at High Desert State Prison, DOES I to III, ROES I to III,<br><br>　　　　　　Defendants. | Case No. 2:23-cv-01059-GMN-MDC<br><br>**ORDER SANCTIONING DEFENDANTS PURSUANT TO FRCP 16(f)** |

The Court has reviewed defendants' *Response* (ECF No. 52) to the Court's *Order To Show Cause Why Defendants Should Not Be Sanctioned* (ECF No. 50) ("OSC"). Under the circumstances here, the Court finds that defendants did not show cause and that sanctions are appropriate. This is a medical indifference case in which the main allegations are that defendants refused to provide plaintiff with adequate medical care. Defendants requested a settlement conference after receiving plaintiff's settlement demands that consisted primarily of medical-related items. At the settlement conference, however, defendants did not produce a representative with binding authority to settle plaintiff's medical-related items, in violation of the Court's orders and resulting in a waste of resources.

For the reasons stated more fully below, defendants are sanctioned **$250.00**, payable to the Clerk of the United States Court for the District of Nevada for (a) failing to obey the Courts December 3, 2024

Order (ECF No. 46); and (b) being substantially unprepared to participate in the Settlement Conference by failing to arrange for a representative with settlement authority regarding plaintiff's non-monetary demands to be present. Defendants shall pay the **$250.00** sanction by **March 25, 2025**, and immediately thereafter file a Notice of Compliance.

I. **THIS IS A MEDICAL INDIFFERENCE CASE**

The substance of this action is premised on defendants' alleged failure to provide plaintiff with adequate medical care and reasonable accommodations for his disabilities.

Plaintiff alleges that defendants ignored and delayed responding to his requests for medical evaluation and care. *First Amended Complaint ("FAC"), ECF No. 5.* Plaintiff also alleges that defendants refused to provide him with medical treatment after being evaluated, and also refused to provide him with his diagnostic results. *Id.* The District Judge's 12/01/23 Screening Order (ECF No. 6) succinctly and clearly summarizes this portion of plaintiff's colorable medical indifference claim:

> The Court finds that Plaintiff states a colorable claim of deliberate indifference to a serious medical need against Defendants Dr. Malanaga and Dr. Evram. The Court liberally construes the complaint as alleging that Plaintiff suffers from lower back pain. Plaintiff had an appointment with Dr. Malanaga, but Dr. Malanaga ignored Plaintiff's complaints of lower back pain. Dr. Malanaga used the appointment to confirm that Plaintiff cannot use his legs, but he refused to provide Plaintiff any other medical care or treatment. Dr. Evram ordered an MRI examination for Plaintiff, but he refused to prescribe any medication for Plaintiff's pain and has refused to provide Plaintiff the results of the MRI examination. Plaintiff continues to experience ongoing back pain.

*Id., ECF No. 6 at p. 5.*

Another substantive aspect of plaintiff's claims arise from defendants' allegedly ignoring his requests for reasonable accommodations for his medical conditions, which he pursued through defendants' administrative process. *12/01/23 Screening Order, ECF No. 6 at pp. 6, 8.* The District Judge liberally construed plaintiff's allegations as including "a claim under the Americans with

2

Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794 or Section 5." *Id. at p. 6.* "The Supreme Court has held that a prisoner may state an ADA claim based on the 'alleged deliberate refusal of prison officials to **accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care**, and virtually all other prison programs.'" *Id. at p. 8* (*quoting United States v. Georgia*, 546 U.S. 151, 157 (2006)(emphasis added).

The District Judge further observed that:

> [a]lthough the ADA does not expressly provide for reasonable accommodations, the implementing regulations provide that [a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

*12/01/23 Screening Order, ECF No. 6 at p. 8.* (internal quotations omitted)(*quoting* 28 C.F.R. § 35.130(b)(7)).

## II.    APPLICABLE LAW

The Court has "broad discretion to impose sanctions." *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1397 (9th Cir. 1993). The Court also has wide authority to impose sanctions. Per Fed. R. Civ. P. 16(f)(1), the Court may impose any "just" sanctions under Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney:

> (A) fails to appear at a scheduling or other pretrial conference;
> (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or
> (C) fails to obey a scheduling or other pretrial order.

*Id.*

A finding of bad faith under Rule 16 is not required. Sanctions per Rule 16 may be imposed even when disobedience is unintentional. *See Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 769 (9th Cir. 2001).

The Court may impose "any and all appropriate" sanctions under Local Rule IA 4–1. *Id.* Finally, the Court may impose sanctions pursuant to its inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, n. 13 (1991)(there is no indication in Rule 16 "of an intent to displace the inherent power, but rather simply to provide courts with an additional tool by which to control the judicial process.").

A primary objective of Rule 16(f) is to deter "conduct that unnecessarily consumes the Court's time and resources that could have been more productively utilized by litigants willing to follow the Court's procedures." *Wilson v. KRD Trucking W.*, No. 2:10-CV-00163-KJD, 2013 WL 836995, at *4 (D. Nev. Mar. 6, 2013). Thus, the Court also considers the resources wasted by the offending party due to the violation of the Court order. *Id.*

The Court also has discretion to fashion appropriate sanctions. Among other things, the Court may award fees to the opposing party. *See CLM Partners LLC v. Fiesta Palms, LLC,* No. 2:11-cv-01387-PMP-CWH, 2013 WL 6388760 (D. Nev. Dec. 5, 2013). The Court may also impose fines as a sanction. *Nick v. Morgan's Foods, Inc.*, 270 F.3d 590, 595–96 (8th Cir. 2001) ("Rule 16(f) expressly permits a judge to impose any other sanction the judge deems appropriate in addition to, or in lieu of, reasonable expenses…. Here, the district court judge acted well within his discretion by imposing a monetary fine payable to the Clerk of the District Court as a sanction….").

//

//

//

4

### III. DEFENDANTS FAILED TO SHOW CAUSE WHY THEY SHOULD NOT BE SANCTIONED

#### A. Defendants Did Not Produce a Representative With Binding Authority Regarding Plaintiff's Medical-Related Settlement Proposals

The Court held the Settlement Conference on February 6, 2025. The Court first caucused with the plaintiff, and he made a settlement offer with monetary and medical related proposals. Plaintiff's medical needs proposals were consistent with the proposals previously communicated to defendants on November 22, 2024. Hence, plaintiff's medical needs proposals included a new wheelchair or improvements to his existing wheelchair, handicap tray table, double mattress; gloves; and therapy and medical care for his lower extremities. Defendants did not have a representative with binding authority to address and agree to plaintiff's non-monetary proposals.

Instead, defendants stated that plaintiff would have to submit requests for his medical needs proposals for consideration and evaluation by prison medical staff to determine whether the medical care and items requested by plaintiff were medically necessary. None of the defendant representatives made or could not make a definitive, non-conditional, binding response to plaintiff's medical needs proposals. Best defendants could do is condition plaintiff's medical proposals to the prison's administrative process and medical evaluations. *See also Defts.' Response, ECF No. 52 at p. 7.* In sum, the only unconditional and binding settlement that defendants could make, and actually made, was monetary. Thus, in response to plaintiff's dynamic offer, defendants only counter was a nominal monetary payment. *Id.* at p. 16.

Because plaintiff primarily sought non-monetary, medical accommodations and defendants had no representatives that could enter into a binding settlement on plaintiff's medical proposals, the Court terminated the Settlement Conference. The Court determined that it was not possible to achieve a final, binding, non-conditional settlement. On February 7, 2025, the Court issued an Order to Show Cause

5

(ECF No. 50) ("OSC") to give defendants an opportunity to show cause, if any, why they should not be sanctioned for failing to comply with the Court's December 3, 2024 Order (ECF No. 46)("12/03/24 Order") setting the Settlement Conference, failing to adequately prepare, and failing to participate in good faith. Defendants' Response (ECF No. 52) to the Court's OSC fails to show cause why defendants should not be sanctioned.

Among other things, defendants argue that the Court's 12/3/24 Order (ECF No. 46) did not expressly require them to produce medical personnel. *Defs.'s Response, ECF No. 52 at p. 16*. This argument is unreasonable. The 12/3/24 Order expressly required defendants to produce representatives with binding settlement authority on the "most recent demand." *Id*. Defendants knew the plaintiff's most recent medical demand and should been prepared to have produced a representative with authority to negotiate, and unconditionally agree to such items. A person having full, binding authority is one who is "authorized to…. agree **at that time** to any settlement terms acceptable to the parties." *Mitchell v. Haviland*, No. 2:09-CV-3012 JAM KJN, 2014 WL 271666, at *7 n. 2 (E.D. Cal. Jan. 23, 2014)(emphasis added)(*citing G. Heileman Brewing Co., Inc. v. Joseph Oat Corp*., 871 F.2d 648, 653 (7th Cir.1989)). It is not the Court's responsibility to investigate defendants' personnel to identify any specific individuals. The 12/3/24 Order required defendants to bring a representative with binding authority as to plaintiff's most recent medical demands and defendants failed to do so.

Defendants argue in general that medical-related matters, such as treatment and accommodations need to be screened and evaluated by medical personnel to ensure they are medically necessary and for prison safety concerns. In broad, general circumstances, these points and objectives are certainly compelling. These points are also persuasive in connection with the new medical proposals that plaintiff proposed at the Settlement Conference. However, in the specific circumstances here and as to the medical proposals that plaintiff had previously communicated to defendants, defendants' argument is

not persuasive. As discussed below, defendants fail to show cause why they did not conduct medical and safety evaluations for the previously communicated proposals in preparation for the Settlement Conference.

Conditioning settlement on requiring plaintiff to pursue the defendants' administrative path and wait for medical evaluations was also unreasonable under the facts of this case. Plaintiff filed this action because of alleged failures in defendants' medical and administrative paths. *12/01/23 Screening Order, ECF No. 6 at p. 5*. Defendants did not effectively offer plaintiff anything of settlement value but merely reinforced the very process that gave rise to plaintiff's action. Moreover, this was not an Early Neutral Evaluation, Inmate Early Mediation, or similar settlement conference that was imposed by the Court and occurring at the onset of litigation where prior negotiations or proposals may not have been exchanged and considered. These are not the circumstances where defendants may not have been aware of plaintiff's medical-related settlement demands. The situation here is much different.

First, the Settlement Conference was expressly requested by defendants. It was not ordered or imposed by the Court. Second, defendants requested the conference knowing most of plaintiff's settlement demands were medical-related because his counsel had expressly communicated them to defendants three (3) months prior to the February 6, 2025, Settlement Conference.[1] Third, defendants knew that such medical settlement elements needed to be vetted. *See Defts.' Response, ECF No. 52 at p. 7*. Defendants had reasonable time to conduct medical and safety evaluations and other such reasonable preparations for the Settlement Conference and produce a person with binding authority. In sum, defendants had an obligation to have someone with full, binding authority over the demands previously made by the plaintiff without requiring some future approval from a non-appearing party, and

---

[1] One medical-related demand made by plaintiff which had not been previously communicated was the request that plaintiff be seen by an outside medical provider for leg swelling.

7

if defendants believed that medical evaluation was necessary, they should have accomplished that prior to the Settlement Conference.

Instead, the best defendants could commit to during the February 6, 2025, Settlement Conference was to have plaintiff go through their administrative process, medical evaluation, and uncertain determination with no commitment whether he would actually receive any of the medical related items he was bargaining for at the conference.  That is not a capitulation. That was not a give and take.  That was not negotiating.  "Settlement agreements embody compromises in which each side gives up something it might have won in litigation and waives its right to litigate." *In re VEC Farms, LLC*, 395 B.R. 674, 684 (Bankr. N.D. Cal. 2008).  Defendants merely offered something they were already required to do.  *See e.g., ECF No. 52 at p. 10; see also United States v. Georgia*, 546 U.S. at 157 (prisoner may state an ADA claim based on the 'alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs.").

**B.      Defendants Knew the Primary Settlement Elements Included Medical Care**

On December 2, 2024, the parties submitted a stipulation requesting the Settlement Conference (ECF No. 45) ("12/2/24 Stipulation") to assist them in their settlement discussions.  Those settlement discussions included for defendants to provided plaintiff with certain medical care and equipment and other accommodations for his disability-related needs.  Specifically, plaintiff had communicated to defendants on November 22, 2024, that his medical settlement demands included: (1) a new wheelchair; (2) back cushion for his wheelchair; (3) seat cushion for his wheelchair; (4) a footrest for his wheelchair with cushions; (5) handicap tray table; (6) double mattress; (7) table; (8) gloves; and (9) physical therapy.  *Defs' Response, ECF No. 52 at p. 2*.   These non-monetary demands were not surprising given

plaintiff's claims concern wheelchair access and related medical issues.  After considering plaintiff's settlement proposals, defendants filed the 12/2/24 Stipulation requesting the Settlement Conference.

Defendants did not advise the Court of any limitations at the Settlement Conference.  In other words, defendants did not advise the Court that they would not be able to come to a binding agreement at the Settlement Conference because they would have to condition all medical demands to the prison administrative process and medical provider evaluations.  On the contrary, defendants stated they would be "able to amicably resolve the dispute during a confidential settlement conference." *12/2/24 Stipulation, ECF No. 45 at p. 2*.  The parties' February 3, 2025, Stipulation requesting to excuse defendant James Scalley (ECF No. 49) ("2/3/25 Stipulation") further confirmed that defendants would have "two representatives with authority to resolve the case will attend the Settlement Conference." *2/3/25 Stipulation, ECF No. 49 at p. 2*.  Again, defendants did not disclose or advise the Court that any of the plaintiff's previously communicated medical settlement proposals could not be resolved at the settlement conference with a binding agreement without any conditions, including uncertain medical examinations which could result in defendants ultimately not agreeing to any of plaintiff's medical demands.   In sum, defendants communicated that a binding representative would attend the requested settlement conference prepared to unconditionally and finally resolve the action right then and there at the settlement conference.  The Court relied on those representations and issued the 12/3/24 Order (ECF No. 46) setting the Settlement Conference.

Settlement conference preparations are time consuming and distract Court staff and resources from other matters.  Defendants' failure to produce a binding representative at the Settlement Conference not only violated the Court's 12/3/24 Order but resulted in a considerable waste of resources – the Court's time and resources as well as those of plaintiff and his counsel.

//

### C. Defendants Failed To Prepare For The Settlement Conference

As developed above, this is a medical indifference action centering around plaintiff's medical needs, which obviously included wheelchair and related items as material components of the prior settlement discussions between the parties. In their response to the Court's OSC, defendants state that, prior to requesting the Settlement Conference, they discussed that plaintiff's medical-related settlement demands would be subject to "medical provider evaluations" before defendants could agree to any such demands. *Defts. Response, ECF No. 52 at p. 3*. Not only did defendants fail to disclose this in their 12/2/24 Stipulation (ECF No. 45), but they also failed to conduct any such requisite "medical provided evaluations" prior to the Settlement Conference so that defendants would attend the conference ready to fully and completely resolve the matter at the time of the conference, as required by the Court's 12/3/24 Order (ECF No. 46). While defendants' Response (ECF No. 52) provides lengthy, general discussion regarding the NDOC's need to conduct medical evaluations to determine if medical settlement proposals are medically necessary, defendants provide no justification why they failed to conduct any of the known and anticipated "medical provider evaluations" prior to the Settlement Conference.

The need for such preparation and to conduct medical provider and safety evaluations prior to the Settlement Conference was manifest here. Again, defendants knew the medical proposals that would be raised at the Settlement Conference - *i.e.,* (1) a new wheelchair; (2) back cushion for his wheelchair; (3) seat cushion for his wheelchair; (4) a footrest for his wheelchair with cushions; (5) handicap tray table; (6) double mattress; (7) table; (8) gloves; and (9) physical therapy. *Defs' Response, ECF No. 52 at p. 2*. Indeed, both parties conveyed to the Court that these items would be negotiated at the Settlement Conference, and defendants' *Confidential Settlement Brief* to the Court did not disclose or advise the Court that defendants would have to conduct "medical provider evaluations" to determine if they were "medically necessary" prior to unconditionally accepting any such proposals. The same

analysis applies to defendants' claim that they needed to subject plaintiff's medical proposals to be evaluated for safety and security risks. *See e.g., Defs.'s Response at 11.* While safety and security risks are certainly important and valid considerations, defendants do not show cause why they did not make a safety and security assessment of plaintiff's previously communicated medical settlement proposals in preparation for the Settlement Conference.

## IV.     Conclusion

For the foregoing reasons, the Court finds that defendants have failed to show cause why they should not be sanctioned. Accordingly,

**IT IS ORDERED** that defendants are sanctioned for (a) failing to obey the Courts 12/3/24 Order (ECF No. 46); and (b) being substantially unprepared to participate in the Settlement Conference and shall pay **$250.00** to the Clerk of the United States Court for the District of Nevada by **March 25, 2025**.

**IT IS ORDERED**
Dated: March 10, 2025.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge